IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| SILAS CARTER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Civil Action No. |
| | : | **3:08-CV-37 (CDL)** |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## RECOMMENDATION

The plaintiff herein filed an application for disability insurance benefits and Supplemental Security Income benefits on February 25, 2003, alleging disability beginning that day.   The application was denied initially and upon reconsideration; plaintiff requested a hearing before an Administrative Law Judge, which was held on September 23, 2005.  On March 29, 2007, the ALJ denied plaintiff's claim.  The Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner.   The plaintiff subsequently filed an appeal to this court.  Jurisdiction arises under 42 U.S.C. § 405(g).  All administrative remedies have been exhausted.

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person

would accept the evidence as adequate to support the conclusion at issue.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Richardson v. Perales, 402 U.S. 389, 401 (1971).  In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."  Bloodsworth, 703 F.2d at 1239.  "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  Cornelius, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits.  The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims:  (1) whether the claimant is engaged in gainful employment;  (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months;  (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1;  (4) whether the impairments prevent claimant from returning to his previous work;  and (5) whether claimant is disabled in light of age, education, and residual functional capacity.  Ambers v. Heckler, 736 F.2d 1467, 1470-71 (11th Cir.1984).  Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age,

education, and work experience.  20 C.F.R. § 404.1520(d).

The ALJ determined that plaintiff had  "severe" impairments including borderline
intellectual functioning, alcohol dependence, and a history of ulcers, but that he retained the
residual functional capacity to perform his past relevant work as a dishwasher and cook and was
therefore not disabled.

### Listing

Plaintiff contends his impairments met or equaled "Section 12.05(C)" of the Listing of
Impairments. (Pl.'s Mem. of Law 16-20.) See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C).
In order to meet a listing, the claimant must: (1) have a diagnosed condition that is included in
the listings; and (2) provide objective medical reports documenting that his condition meets all
of the specific criteria of the applicable listing and the duration requirement. See 20 C.F.R. §§
404.1525(c)-(d), 416.925(c)-(d). The medical standards are stricter for presumptive disability
under the listings than for cases that proceed to other steps in the sequential evaluation because
they carry the entire burden of proving disability; there is no consideration of vocational
factors such as age, education, or work experience. See 20 C.F.R. §§ 404.1520(a)-(g);
416.920(a)-(g).

Under Listing 12.05 (Mental Retardation), a claimant must *first* show that he has mental
retardation and then present sufficient evidence to satisfy any one of the four sets of criteria
listed. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Listing 12.05 states that "[m]ental
retardation refers to significantly subaverage general intellectual functioning with deficits in
adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence
demonstrates or supports onset of the impairment before age 22." Id. The "deficits in adaptive

functioning" required for a diagnosis of mental retardation are significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 41-42, 47, 49 (4th ed. 1994) (DSM-IV-TR). The description of mental retardation in Listing 12.05 is consistent with accepted medical standards which recognize that a diagnosis of mental retardation must be based in part on deficits in adaptive functioning that manifested in the developmental period. See id.; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

Listing 12.05(C) requires: a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C). While a valid IQ score below seventy will satisfy the first prong of the listing requirement, it is entirely appropriate for an ALJ to examine evidence other than IQ test scores to determine whether a claimant is mentally retarded. See Popp v. Heckler, 779 F.2d 1497, 1501 (11th Cir. 1986); Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (stating that a valid IQ score need not be conclusive of mental retardation where the score is inconsistent with other evidence). IQ scores are merely diagnostic tools, like x-rays or electrocardiograms, which are used to help ascertain possible diagnoses or impairments. See 20 C.F.R. §§ 404.1508, 404.1528, 416.908, 416.928; see also DSM-IV-TR at 41-42, 739-40 (discussing the use of IQ scores to help determine if an individual has mental retardation or borderline intellectual functioning). IQ scores are not diagnoses, impairments, or functional limitations, and they should not be used as such.

4

While Plaintiff offered his Verbal IQ of 72, Performance IQ of 61, and Full Scale IQ of 68 (Tr. 640) as evidence, that evidence alone is insufficient to satisfy Listing 12.05(C). See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

There is no evidence that prior to the age of twenty-two, Plaintiff suffered from deficits in adaptive functioning. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. To the contrary, the ALJ expressly noted that Plaintiff's school records, which indicate that Plaintiff completed high school in regular classes, do not support a diagnosis of mental retardation (Tr. 15, 18, 109-10). The records include a notation that Plaintiff had the ability to do the work well, but preferred to "cut up and distract others" (Tr. 15, 18, 109-10). Additionally, the ALJ noted that Plaintiff successfully worked for eleven years at a hotel and progressed from dishwasher to cook, which is semi-skilled work (Tr. 18). Plaintiff's former manager described him as a very good and valuable employee who quickly learned new and more challenging jobs without obvious difficulty and was not a slow learner (Tr. 18, 79, 138). Plaintiff's ability to work in the past with his same level of intellectual functioning further undermines his allegations of mental retardation.  Ellison v. Barnhart, 355 F.3d at 1272, 1275-76 (11th Cir. 2003); see also Blacha v. Sec'y of Health and Human Serv., 927 F.2d 228, 231 (6th Cir. 1990).

As the ALJ noted that, in September of 1992, consultative examiner Robert Bridges, Ph.D., reported that Plaintiff had a full scale IQ of 68, but diagnosed Plaintiff with borderline intellectual functioning, not mental retardation (Tr. 16, 18, 641-42). Dr. Bridge's clinical impression of borderline intellectual functioning is significant because it rebuts the presumption of deficits in adaptive functioning. By definition, an individual with borderline intellectual functioning did not have deficits in adaptive functioning manifested during the developmental

5

Case 3:08-cv-00037-CDL   Document 12   Filed 07/30/09   Page 6 of 9

period. See DSM-IV-TR at 46. In contrast, mental retardation requires exhibited deficits in

adaptive functioning during the developmental period. See id.; 20 C.F.R. pt. 404, subpt. P, app.

1, § 12.05. Dr. Bridges explained that he had expected Plaintiff's scores to be higher based on

his evaluation. (Tr. 16, 641). Academically, Plaintiff tested significantly higher than expected,

with a tenth grade reading level and a seventh grade math level (Tr. 16, 641).

Mentally retarded individuals, however, can generally only acquire academic skills up to

the sixth grade. See DSM-IV-TR at 39-40. Dr. Bridges opined that though Plaintiff may have

some difficulties with learning new tasks, he "[could] not really see anything that would have an

impact on his employability" (Tr. 642).

Although consultative examiner Dr. Whitley opined that Plaintiff suffered from mild

mental retardation, the ALJ accorded little weight to his opinion (Tr. 18, 151).  The ALJ found

Dr. Whitley's assessment that Plaintiff is a slow-learner, limited to unskilled and simple work

tasks is inconsistent with Plaintiff's years of successful semi-skilled work as a cook (Tr. 18, 79,

138, 151). During Plaintiff's employment, his manager observed that he learned new jobs

without obvious difficulty (Tr. 18, 79, 138, 151). The ALJ noted that although Plaintiff initially

reported that he could not read and write more than his name (Tr. 70), he subsequently

completed daily living questionnaire (Tr. 80-85) and work history forms without assistance (Tr.

15, 80-85, 86-93).

Therefore, the ALJ's determination that plaintiff did not meet Listing 12.05(C) was based

upon substantial evidence.

***Past Relevant Work***

Plaintiff contends that the ALJ erred in failing to make sufficient findings regarding

plaintiff's ability to perform his past relevant work.

The ALJ found that the plaintiff was limited in his ability to work at medium unskilled or semiskilled tasks, with moderate limitations in concentration, persistence and pace.  In assessing the claimant's past relevant work as a cook and dishwasher, the ALJ asked the Vocational Expert to identify the exertional and skill levels of these jobs and identify whether her testimony was consistent with the Dictionary of Occupational Titles. The VE testified that both were medium exertional work, and dishwashing was unskilled whereas cooking was low level semi-skilled work. No further questions were asked regarding the physical or mental demands of these jobs, nor whether the claimant could meet those demands given his residual functional capacity.

Social Security Ruling 82-62  requires that "[i]n finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:

> 1. A finding of fact as to the individual's RFC.
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62 (emphasis added). "Where there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered, the Secretary cannot properly determine whether the claimant has the residual functional capacity to perform his past relevant work." Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987).

The ALJ recounted the vocational expert's testimony that the demands of Plaintiff's past work as a dishwasher and cook required medium-level exertion of a semi-skilled and unskilled nature, respectively (Tr. 20, 72, 87, 351). Based on Plaintiff's RFC and evidence that Plaintiff

7

had successfully performed both jobs for a total of eleven years (Tr. 18, 79, 138), the ALJ specifically concluded that Plaintiff could perform his past work as it is generally performed (Tr. 20).

Although the ALJ did not discuss this at length in making this specific finding, she did discuss at length the statements of Plaintiff's former manager (Tr. 18, 79, 138); the record also contains information provided by Plaintiff in his Disability Report (Tr. 71-72), information provided by Plaintiff in his Work History Report (Tr. 86-87), the testimony of a vocational expert (Tr. 351), and Plaintiff's testimony at hearing (Tr. 344-48).

Remanding this case for additional explanation of how the ALJ arrived at the proper conclusion would serve no practical purpose and would be a waste of judicial and administrative resources. See Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997); Ware v. Schweiker, 651 F.2d 408, 412 (5th Cir. 1981); see also Ward v. Commissioner of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) (stating that "a remand is not essential if it will amount to no more than an empty exercise").

*Alcohol*

The Code of Federal Regulations, in 20 C.F.R. § 416.935 and 20 CFR § 404.1535, states that where there is evidence of substance abuse or dependence, an evaluation will be made to determine whether or not it is a material factor in the claimant's disability. That is, a determination of whether, if the substance abuse or dependence were removed, the disabling conditions would remain. If so, the claimant will be found to be disabled. *Id.*

Plaintiff contends that the ALJ failed to adequately discuss the effect of plaintiff's use of alcohol on his ability to perform work.  However,  Sections 404.1535(a) and 416.935(a) of Title

20 of the Code of Federal Regulations do not apply where the ALJ does not find that the plaintiff is disabled. They state, "If we find that you are disabled and have medical evidence of your . . .alcoholism, we must determine whether your . . . alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a).

Here, the ALJ determined that Plaintiff was not disabled (Tr. 12-20). Thus, the requirements of Sections 404.1535(a) and 416.935(a) clearly do not apply and therefore the ALJ's failure to make findings in accordance with them does not amount to error.

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence, it is the RECOMMENDATION of the undersigned that the Commissioner's decision be  **AFFIRMED** pursuant to Sentence Four of § 405 (g).   Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Clay D. Land, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 30th  day of July, 2009.

//S Richard L. Hodge_____
      RICHARD L. HODGE
msd                     UNITED STATES MAGISTRATE JUDGE